# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM G. HOLMES, an individual,<br><br>                          Plaintiff,<br><br>        vs.<br><br>DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR MORGAN STANLEY IXIS REAL ESTATE CAPITAL TRUST 2006-2, a Delaware Corporation; LENDING HOUSE FINANCIAL CORP., d.b.a. MASTER FINANCIAL, INC., a California Corporation; SAXON MORTGAGE SERVICES, INC., a Texas Corporation; and DOES 1 to 100, Inclusive,<br><br>                          Defendants. | CASE NO. 09cv1413-LAB (NLS)<br><br>**ORDER GRANTING IN PART MOTION TO DISMISS; AND**<br><br>**ORDER GRANTING MOTION TO EXPUNGE NOTICE OF *LIS PENDENS***<br><br>[Docket numbers 12, 18.] |

Plaintiff brought this action seeking to set aside a trustee's sale of his residence, and also seeking damages and equitable relief. He dismissed one Defendant, then filed his amended complaint (the "FAC"). Defendants Deutsche Bank National Trust Company as Trustee for Morgan Stanley Ixis Real Estate Capital Trust 2006-2 ("Deutsche Bank")[1] and Saxon Mortgage Services, Inc. ("Saxon") then moved to expunge a notice of pendency of

---

[1] The parties use different identifiers for this party; the FAC calls this party Morgan Stanley, while this Defendant identifies itself as Deutsche Bank. For convenience, the Court will use the Defendants' identifier.

action Plaintiff recorded while this action was pending. As part of the motion to expunge, these Defendants sought attorney's fees. If the Court does not order the notice of *lis pendens* expunged, the motion requests an order requiring Plaintiff to post a bond. These Defendants then filed a motion to dismiss for failure to state a claim, and sought judicial notice of several loan-related documents.

Although the motion to dismiss was filed later, the Court finds it appropriate to address it first, because it disposes of most of the issues raised in the motion to expunge.

## I. Summary of Allegations and Claims

The FAC shifts between making accusations against Defendants Deutsche Bank and Saxon (and a third entity, Lending House d.b.a. Master Financial, which has not appeared and which apparently is now out of business) and making accusations against various other entities who are not parties to this action. The FAC identifies Deutsche Bank, Saxon, and Master Financial collectively as the "Broker and Lender Defendants" (FAC, ¶ 15), though in fact these are the only Defendants.

According to the FAC, Deutsche Bank, Saxon, and Master Financial told Plaintiff in July of 2006 he would qualify for a loan at a fixed rate of 7.45% for 360 months, with monthly payments just over $4,000. (FAC, ¶ 16.) The mortgage was to be secured by the equity in his home. The FAC alleges that, at closing, Plaintiff was provided with loan documents that included various false representations regarding Plaintiff's ability to pay (increasing his monthly salary from $9,650 to $13,726), increased closing costs from approximately $10,000 to approximately $28,000, and changed the nature of the loan. The FAC says the loan Plaintiff was actually given was an adjustable rate interest-only loan for two years, with a margin of 5.455% and a prepayment penalty designed to prevent refinancing. (FAC ¶ 17.) The amount of the prepayment penalty isn't alleged. The FAC alleges the broker and lenders didn't provide required disclosures or give him an accurate copy of the loan documents, and that they knew he wouldn't be able to pay the mortgage.

/ / /

/ / /

According to the FAC, Deutsche Bank and Saxon were the original brokers, Master Financial was the lender,[2] and these three deceived him. (FAC, ¶¶ 12,15.) But in a very lengthy paragraph 26, with multiple sub-parts, the FAC accuses several non-Defendants of altering documents, failing to make disclosures, and deceiving him.

In this section of the FAC, Plaintiff accuses Master Financial, Fair Home Lending Financial, Inc. or Principal Mortgage Fund, Inc. (not Deutsche Bank or Saxon) of failing to make disclosures as required under the Truth in Lending Act (TILA). (FAC, ¶ 26(1)(d)). The FAC says Plaintiff later received another misleading TILA disclosure but doesn't say who gave it to him. (*Id.*) It also accuses a Fair Home Lending interviewer, not Defendants, of altering the loan documents without authorization so the information about his mortgage wouldn't be reported to the federal government. (*Id.*, ¶ 26(1)(e).)

The FAC then alleges Deutsche Bank, Saxon, and Master Financial didn't provide him with "the proper documentation on the mortgage application," (FAC, ¶ 26(1)(f)), though it's not explained what "the proper documentation" here means. But then, "at the end of the process," the FAC alleges Deutsche Bank, Saxon, and Master Financial presented him with documentation showing the loan he got, not the loan he thought he was getting. (*Id.*, ¶ 26(1)(g).) The FAC alleges the Fair Home Lending interviewer altered Plaintiff's income on the application (*id.*, ¶ 26(2)(a)), but says "Defendants" (apparently Deutsche Bank, Saxon, and Master Financial) changed the interest rate on his application. (*Id.*, ¶ 26(2)(b).)

The FAC then alleges Deutsche Bank, Saxon, and Master Financial failed to make required TILA disclosures or to provide him with "the proper documentation" on his mortgage application. (FAC, ¶ 26(2)(d) and (e).) The FAC leaves unexplained what "proper documentation" refers to.

In the next subsection, the FAC makes allegations about the terms of the loan and disclosures Plaintiff was given, and says the disclosures are attached as exhibits D and E. (FAC, ¶ 26(3)). Exhibit D is a borrower's estimated settlement statement signed by Plaintiff,

---

[2] Exhibits C and D identify the lender as "Wilmington Finance, a Division of AIG," as the creditor, though Exhibit F, a HUD settlement statement, records a lender fee of $895.00 as going to Master Financial.

and identified as coming from LandAmerica Southland Title. The FAC doesn't refer to an entity by this name, though it identifies Southland Title Escrow as settlement agent for the loan. (*Id.*, ¶ 14.) Exhibit E is a mortgage loan origination disclosure identifying Fair Home Lending as the broker.

The next subsection alleges "the final loan documents were dramatically and secretly switched and for the worse," (FAC, ¶ 26(4)(a)), but doesn't say who switched them. It accuses Master Financial or two non-Defendants of falsifying the application documents. (*Id.*, ¶ 26(4)(b) and (c).) It alleges "[a]ll these facts were kept hidden from Plaintiff when he signed," but doesn't say who hid them. (*Id.*, ¶ 26(4)(d).) It then says at the closing either Master Financial or two non-parties failed to provide accurate TILA disclosure statements or "proper documentation on the 1003 loan application." (*Id.*, ¶ 26(4)(e) and (f). It also alleges Master Financial was responsible for making Plaintiff sign a rider agreeing to a prepayment penalty. (*Id.*, ¶ 26(4)(g).)

The FAC concludes that as a result of Deutsche Bank's, Saxon's, and Master Financials' actions, Plaintiff lost his home in foreclosure and forfeited all his payments, and his credit was ruined. (FAC, ¶ 27.) It is on this basis that he seeks relief. (*Id.*)

The initial allegations are followed by sections identifying sixteen causes of action, and a prayer for relief. The sections identifying causes of action are all styled as being brought against Defendants, but as with the initial allegations, the factual allegations contained in these sections alternately lay the blame at the feet of non-party entities. For example, in support of the TILA claim, the FAC alleges that Fair Home Lending, Principal Mortgage Fund, Inc, Master Financial, "and/or" Saxon

> did a bait and switch with a fixed mortgage; did a bait and switch with Plaintiff's 7.450% - 360 month loan application and Proposed payments of $4,035.42; falsified Plaintiff's loan application; and then failed to disclose material terms of the transaction to the Plaintiff . . . .

(FAC, ¶ 30(d).)

In short, the FAC openly vacillates about who did what, and whether one of the Defendants or someone else was responsible for deceiving and cheating Plaintiff. In all

likelihood the confusion has arisen because the original complaint named the other entities as Defendants, and the FAC dropped them. In other words, it may be simply a series of drafting errors.

**II.     Motion to Dismiss the FAC**

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of the complaint. *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citations omiteed). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations," those allegations must be enough to raise a right to relief above the speculative level." *Id*. (citations omitted). "[S]ome threshold of plausibility must be crossed at the outset" before a case is permitted to proceed. *Id*. at 558 (citation omitted).

When determining whether a complaint states a claim, the Court accepts all allegations of material fact in the complaint as true and construes them in the light most favorable to the non-moving party. *Cedars-Sinai Medical Ctr. v. National League of Postmasters of U.S.*, 497 F.3d 972, 975 (9th Cir. 2007) (citation omitted). But the Court is "not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint," and does "not . . . necessarily assume the truth of legal conclusions merely because they are cast in the form of factual allegations." *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003) (citations and quotation marks omitted).

While Fed. R. Civ. P. 8(d)(2) and (3) permit a plaintiff to plead in the alternative, Rule 11 (b) requires that reasonable inquiry be made before a complaint is filed, and that only those factual allegations that have evidentiary support or are likely to have evidentiary support be included. Here, Plaintiff would have known (or could probably easily discover)

/ / /

/ / /

who the lender and broker he dealt with were.[3] Instead, he has made allegations against several entities. It's possible he is pleading in the alternative, but if so, he has not said so. Instead, the FAC leaves it unexplained who made disclosures or other statements, who lent him money, and whether the allegedly liable entities are among the named Defendants. But all the FAC alleges is that either Defendants or some non-parties wronged him. In other words, the allegations amount to little more than claims that maybe Defendants are liable and maybe they aren't. This fails to rise above the speculative level.

Deutsche Bank and Saxon, for their part, interpret the FAC as not alleging their involvement in the origination of the loan and deed of trust. (Mot. to Expunge, 3:25–27.) They in turn contend Deutsche Bank later became the beneficiary of the deed of trust and Saxon became the loan servicer. (*Id.*, 3:19–21.) But this is only one possible interpretation of the FAC's contradictory or alternative allegations. The standard for ruling on Rule 12(b)(6) motions requires the Court to accept the FAC's factual allegations (including either version of the FAC's alternative allegations, as permitted under Rule 8(d)). The Court can't consider Deutsche Bank's and Saxon's own representations at this stage,[4] so these can't serve as a basis for dismissal. The documents these Defendants ask the Court to notice do show Master Financial was the lender, but they don't conclusively show who was involved in the process of originating the loan and deed of trust and, by themselves, they don't exclude involvement by either Defendant.

While Plaintiff hasn't pleaded a cause of action against either of these Defendants, it is not absolutely clear from the pleadings and other materials before the Court that he couldn't do so given the opportunity. *See In re Daou Systems, Inc.*, 411 F.3d 1006, 1013

---

[3] Plaintiff argues he needs to perform discovery to find out what Deutsche Bank's and Saxon's involvement with the loan was. (Opp'n to Mot. to Expunge, 2:17–21.) But he appears to believe or accept that neither of these Defendants was the originating lender. (*Id.*) If he had any reason to think either or both were among the originating brokers and lenders, he has not said so or explained why he thinks this.

[4] Certain exceptions to this rule are available for material incorporated into the complaint, or matters subject to judicial notice, *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007), but application of either exception wouldn't resolve the matter, because the documents available to the Court don't show the involvement of either Deutsche Bank or Saxon.

(9th Cir. 2005) (explaining that dismissal for failure to state a claim is generally without prejudice, unless it is clear the complaint could not be saved by amendment).

Assuming Plaintiff can, consistently with the requirements of Rule 11, allege either Deutsche Bank or Saxon were involved in making misrepresentations to him, withheld information from him, or otherwise misled him during the origination process, he may be able to bring claims against them. If they are merely successors as they themselves claim, however, the possibility that he will be able to plead a viable claim is significantly reduced.

### III. Motion to Expunge Notice of *Lis Pendens*

Deutsche Bank and Saxon ask the Court, pursuant to Cal. Civ. Proc. Code §§ 405.31, 405.32, and 405.34, to expunge the notice of *lis pendens* Plaintiff recorded on August 11, 2009. They also ask the Court to take notice of certain documents, and seek $1,880 in attorney's fees. The motion is brought on the theory that the complaint is meritless. It refers to the original complaint. Some of the allegations in the original complaint were abandoned when the FAC was filed, so the many of arguments set forth in the motion to expunge are irrelevant to the FAC. For the most part, the analysis of this motion is subsumed within the analysis of the motion to dismiss. For the sake of completeness, however, a discussion of certain points raised in the briefing on the motion to expunge is appropriate.

Under California law, a notice of *lis pendens* should be expunged if a plaintiff cannot establish his complaint contains a real property claim. *Kirkeby v. Superior Court*, 33 Cal.4th 642, 647 (2004). "Unlike most other motions, . . . the burden is on the party opposing the motion [to expunge] to show the existence of a real property claim. *Id*. at 647 (citing Cal. Civ. Proc. Code § 405.30). In his opposition to the motion, Plaintiff argues he can establish this. At the pleading stage, the Court undertakes a limited demurrer-like analysis focusing on whether a viable property claim has been pleaded. *Id*. at 647–48. For this purpose, a real property claim is a cause of action "which would, if meritorious, affect . . . title to, or the right to possession of, specific real property . . . ." Cal. Civ. Proc. Code § 405.4. Plaintiff contends all his claims are real property claims, but this is erroneous. Because the property has already been sold, only claims that would support setting aside that sale affect right or

title to the property at issue here, and Plaintiff has failed to show why this remedy would be available for most of his claims.

In contrast to the FAC, Plaintiff's opposition at least hypothetically treats Deutsche Bank as an assignee and Saxon as the loan servicer, and argues that they can be held liable for the loan originators' actions. (Opposition, Docket no. 15 at 4:17–18, 4:25–5:2, 6:6–10.) Plaintiff's opposition primarily addresses TILA and RESPA claims, statutes of limitations, and the "failure to tender" defense to his wrongful foreclosure claims, and addresses other issues only in passing. For purposes of the motion to expunge, the Court will therefore treat Defendants' other arguments as unopposed.

### A. RESPA Claims

Plaintiff's RESPA claims pertain to allegedly undisclosed fees that constituted unlawful kickbacks. Although the RESPA section contains references to fraud, his RESPA claims are not fraud claims. Rescission is not an available remedy for this type of claim, *Pettie v. Saxon Mortg. Servs.*, 2009 WL 1325947 at *3 (W.D.Wash., May 12, 2009), and this claim therefore does not affect the title or right to possession of real property. Under Cal. Civ. Proc. Code § 405.4, a notice of *lis pendens* is not properly based on these claims.

### B. Statutes of Limitations

Plaintiff agrees some of his TILA claims are subject to a one-year statute of limitations and concedes these claims would be barred unless he is entitled to tolling. In support of his argument for tolling, Plaintiff points out he pleaded fraud and concealment. As part of his opposition to the motion to expunge, however, he has represented Deutsche Bank is an assignee and Saxon the loan servicer, and has not claimed they were also broker and lender. In short, he asks for tolling because other entities who are not parties to this action committed fraud and concealed facts from him, not that Defendants did.

Plaintiff has also not explained why he didn't realize after about two years that his interest or payments were increasing and brought suit then instead of a year later, two months after the foreclosure sale. For example, he hasn't alleged when he was first notified his interest rate would be going up, or when he was first told he would be required to make

larger payments. The Court therefore concludes tolling of the one-year limitations period is inappropriate. *See Herrera v. Countrywide KB Home Loans*, 2010 WL 3516100 at *2–*3 (N.D.Cal., Sept. 8, 2010) (finding plaintiffs failed to show why they could not with due diligence have discovered alleged TILA violations earlier and thus were not entitled to equitable tolling).

Plaintiff also argues that a three-year limitations period for his rescission claim under TILA. But he concedes the right to rescission expires when the property is sold, even if three years have not passed. 15 U.S.C. § 1635(f). Plaintiff's home was sold in April, 2009, so according to his own pleadings the TILA limitations period expired before he filed suit.

Plaintiff also argued the doctrine of equitable estoppel renders his claims timely. "[E]quitable estoppel applies when a plaintiff who knows of his cause of action reasonably relies on the defendant's statements or conduct in failing to bring suit." *Socop-Gonzalex v. INS*, 272 F.3d 1176, 1184 (2001). As mentioned, Plaintiff has not alleged reliance on Defendants' statements or conduct, but on the statements or conduct of non-parties.

As noted above, the FAC contains no viable claim based on fraud that would affect title to the property so the Court need not consider the statute of limitations for such claims.

### D.     Failure to Tender

"A plaintiff seeking to set aside a foreclosure sale must first allege tender of the amount of the secured indebtedness." *Green v. Alliance Title*, 2010 WL 3505072, at *13 (E.D.Cal., Sept. 2, 2010) (citing *Abdallah v. United Sav. Bank*, 43 Cal.App.4th 1101, 1109 (1996)). In other words, a plaintiff must plead that he has paid or is prepared to pay the amount of indebtedness. *Id*. at *13–*14. Plaintiff has not done so, but contends he is not required to do so under TILA and that a different sequence is required. Because the TILA claims are time-barred, however, this argument is unavailable to Plaintiff and he must seek rescission through some other claim.

Plaintiff also argues it is too early to require him to tender, since the amount has yet to be determined. Apparently Plaintiff is asking the Court to decide his various claims for damages or to amend the loan document before he knows how much he owes.

Plaintiff knows (or could determine) how much he received in loan proceeds, and how much he has repaid, so apparently he is asking the Court to adjust the amount he owes, such as by granting reformation of the loan agreements or offsetting his debts by loan proceeds. This argument was rejected in *Green*, 2010 WL 3505072 at *14, and it is inconsistent with precedent. *See, e.g., Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1171 (9th Cir. 2003) (requiring that rescission under TILA be conditioned on repayment of loan proceeds).

To put this in perspective, Plaintiff made only a few years' payments on a 30-year obligation before he became unable to make payments. It is apparent he is unable to repay most of what he received. He also argues "it is too early to determine whether Plaintiff has the ability to tender," (Opp'n to Mot. to Expunge, 8:25–28), suggesting he thinks his inability to tender might excuse failure to do so. In fact, inability to tender ordinarily means rescission must be denied. *See, e.g., Davidson v. Countrywide Home Loans, Inc.*, 2010 WL 2925440, *3 (S.D.Cal., July 23, 2010) (citing California case law for the principle that as a prerequisite for obtaining rescission or cancellation, a plaintiff must "restor[e] to the defendant everything of value which the plaintiff has received in the transaction.") (citations omitted).

Deutsche Bank and Saxon have argued Plaintiff, by seeking equitable remedies in the form of cancellation of his loan and a return of his real property is in essence asking the Court to allow him to keep most of the loan proceeds <u>and</u> keep the house free and clear. The Court agrees this would be the result of failing to apply the tender rule here, and that this result would be inequitable. *See, e.g., Brown v. Nat'l Permanent Fed'l Sav. & Loan Ass'n*, 683 F.2d 444, 447 (D.C.Cir. 1982) (explaining that conditioning a grant of rescission on repayment of loan principal comported with the "traditional equitable notions" that courts are to be guided by).

### E.     Request for Attorney's Fees

Under Cal. Civ. Proc. Code § 405.38, the Court is directed to award attorney's fees and costs, "unless the court finds that the other party acted with substantial justification or

/ / /

that other circumstances make the imposition of attorney's fees and costs unjust." In response, Plaintiff avers he brought this action in good faith.

Here, Plaintiff recorded his notice of *lis pendens* before amending his complaint. The FAC is substantially different, omitting several Defendants. Plaintiff's pleadings suggest that at the time he filed the complaint and recorded the notice of *lis pendens,* he genuinely believed he was defrauded by the original Defendants and was entitled to rescission.

The briefing focuses on the original complaint, but the Court has no basis for ruling on the viability of that complaint at this time. In addition, at this stage the Court has no occasion to receive evidence. The request for attorney's fees will therefore be denied without prejudice as unripe, but may be renewed if the complaint is ultimately dismissed.

### IV. Unserved Defendant

Plaintiff's belief that Master Financial has gone out of business suggests he has probably not served this Defendant (though summonses were issued for the original complaint and FAC). He has not prosecuted his claims against this Defendant, and it is unclear whether he intends to do so. The FAC will therefore be dismissed in its entirety If Plaintiff files a second amended complaint, he will be required to file proof of service on Master Financial, including service of the newly-amended complaint after it is filed. If, as the pleadings suggest, he has never served Master Financial, he will also be required to show good cause for failure to file within the permitted time. *See* Fed. R. Civ. P. 4(m). Should he fail to do so, claims against Master Financial will be dismissed without prejudice.

### IV. Conclusion and Order

Because the FAC does not sufficiently state a claim, it is **DISMISSED WITHOUT PREJUDICE**. The requests for judicial notice are **DENIED AS MOOT**. Because the FAC as a whole is too speculative and non-specific to survive a motion to dismiss, it also cannot survive a motion to expunge. *BGJ Assocs., LLC v. Superior Court,* 75 Cal.App.4th 952, 956–57 (Cal. App. 2 Dist. 1999). For reasons set forth above it is also clear the claims set forth in the FAC will not result in the foreclosure sale being set aside. The motion to expunge is **GRANTED IN PART**. The request to expunge the notice of *lis pendens* is

**GRANTED** but the request for attorney's fees is **DENIED WITHOUT PREJUDICE**. Plaintiff's Notice of Pendency of Action, recorded as Instrument No. 2009-0448927, on August 11, 2009, in the San Diego County Recorder's Office, against the real property located at 11794 Eucalyptus Hills Drive, Lakeside, California 92040, in hereby **EXPUNGED**.

If Plaintiff wishes to file a second amended complaint, he shall first seek leave to do so by *ex parte* motion, attaching his proposed second amended complaint as an exhibit. Plaintiff is directed to be mindful of the problems noted in this order, and to take into account Deutsche Bank's and Saxon's arguments as well.  The *ex parte* application must be filed within **28 calendar days from the date this order** is entered in the docket, and any opposition will be due **14 calendar days after the filing of the application**.  No reply is requested.

If the proposed second amended complaint names Master Financial as a defendant, Plaintiff must also concurrently file proof of service on Master Financial, or shall show good cause for failure to serve as provided in Fed. R. Civ. P. 4(m).  If Plaintiff fails to either file proof of service or show good cause for failure to serve, any claims against Master Financial will be dismissed without prejudice.

**IT IS SO ORDERED**.

DATED: September 21, 2010

*Larry A. Burns*

**HONORABLE LARRY ALAN BURNS**
United States District Judge